OPINION
{¶ 1} Appellant John A. Kennard appeals from his divorce in the Delaware County Court of Common Pleas. Appellee Kelly L. Kennard is appellant's former spouse. The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant and appellee were married on September 18, 1982. Two children were born as issue of the marriage, both of whom are presently unemancipated. Appellee filed a complaint for divorce on July 23, 2001. Appellant answered and filed a counterclaim on August 6, 2001. The matter proceeded to trial before a magistrate for two days in early April 2002. During the trial, the parties reached an agreement as to a "50/50" shared parenting arrangement, but otherwise litigated the issue of financial responsibility for their children. Another contested issue was the disposition of two parcels of real estate: the marital residence located on Old 3C Highway in Westerville, Ohio, and a parcel of undeveloped land of approximately five acres with a gravel driveway, located on Hartford Road in Sunbury, Ohio.
 {¶ 3} On April 12, 2002, the magistrate issued his decision. He therein recommended granting a divorce and, inter alia, awarding the marital residence on Old 3C Highway to appellee and the property on Hartford to appellant. Additionally, the magistrate recommended, inter alia, appellant was to pay child support of $592.42 per month, spousal support of $1500 per month (subject to a reduction to $1200 in June 2003, and a cap of 84 total payments absent death or appellee's remarriage/cohabitation), and $5000 for appellee's attorney fees. Also, in light of the award of the residence to appellee, appellee was therein directed to pay a sum of $37,164.57 to appellant upon the earliest of the following: (1) termination of spousal support for any of the aforecited reasons; (2) appellee's cohabitation in the marital residence with a non-related adult male; or (3) appellee selling or vacating the marital residence.
 {¶ 4} On April 25, 2002, appellant filed an objection to the decision of the magistrate. On September 3, 2002, after obtaining leave from the court, appellant filed a supplemental objection. On November 1, 2002, the trial court issued a judgment entry ruling on the objections. On that same date, the trial court filed its judgment entry decree of divorce. The court again awarded the marital residence on Old 3C Highway to appellee and the property on Hartford to appellant. Appellee was ordered to pay the mortgage on the marital residence; appellant was ordered to pay the mortgage on the Hartford property. Appellant was awarded the 1987 Ford F150 and the antique 1928 Chevrolet. Appellee was awarded the 1992 Ford Aerostar. The parties' Jacuzzi was ordered sold, with the proceeds to be divided equally. Other tangible items were assigned to either party via a chart drafted into the decree. Appellant was awarded his life insurance policy with a cash value of $5637.86; appellee was awarded her life insurance policy with a cash value of $943.84. Child support was set at $400 per month, to increase to $500 per month on June 1, 2003, then to drop to $250 per month in June 2004, upon the older child's scheduled graduation. Spousal support of $1667.67 per month was ordered to be paid by appellant commencing June 2002, with a reduction to $1000 per month effective June 2003. Spousal support was further ordered to jump to $1200 in June 2004, upon the older child's scheduled graduation. Again, the court ordered a cap of 84 total payments absent death or appellee's remarriage/cohabitation. Likewise, as an equalization payment, appellee was ordered to pay a sum of $37,443.67 to appellant upon the earliest of the following: (1) termination of spousal support for any of the aforecited reasons; (2) appellee's cohabitation in the marital residence with a non-related adult male; or (3) appellee selling or vacating the marital residence. Said sum was to be credited for the $5000 in attorney fees ordered to be paid by appellant to appellee.
 {¶ 5} On November 26, 2002, appellant filed a notice of appeal, and herein raises the following six Assignments of Error:
 {¶ 6} "I. The trial court erred to the prejudice of the appellant and abused its discretion by failing to divide the parties' assets and liabilities in an equitable fashion.
 {¶ 7} "II. The trial court erred to the prejudice of the appellant and abused its discretion by establishing spousal support without first considering all the factors as set forth in 3105.18 and 3105.171 and, in particular, the need of the court to consider the parties' position after the division of assets before considering the issue of the propriety of spousal support.
 {¶ 8} "III. The trial court erred to the prejudice of the appellant and abused its discretion in its award of attorney fees to the appellee and against the appellant.
 {¶ 9} "IV. The trial court erred to the prejudice of the appellant and abused its discretion in establishing child support at the level it did in light of the financial circumstances of the parties and the division of time by the parties.
 {¶ 10} "V. The trial court erred to the prejudice of the appellant and abused its discretion in relying on various finplan and other tax projections and computations to justify the spousal support and child support orders made in this case when no testimony was offered about its reliability and the propriety of using the same.
 {¶ 11} "VI. The trial court erred to the prejudice of the appellant and abused its discretion in apparently considering and allowing into evidence various exhibits despite the fact that there was no testimony offered about them.
 I. {¶ 12} In his First Assignment of Error, appellant contends the trial court erred in its rendering of a division of property and debts between the parties. We disagree.
 {¶ 13} We generally review the overall appropriateness of the trial court's property division in divorce proceedings under an abuse of discretion standard. Cherry v. Cherry (1981), 66 Ohio St.2d 348,421 N.E.2d 1293. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. R.C. 3105.171
explains a trial court's obligation when dividing marital property in divorce proceedings as follows: (C)(1) Except as provided in this division or division (E)(1) of this section, the division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section. See also Cherry, supra., at 355. On appellate review, the trial court's property division should be viewed as a whole in determining whether it has achieved an equitable and fair division of marital assets. Briganti v. Briganti (1984), 9 Ohio St.3d 220,222, 459 N.E.2d 896.
 {¶ 14} R.C. 3105.171(F) reads as follows:
 {¶ 15} In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
 {¶ 16} "(1) The duration of the marriage;
 {¶ 17} "(2) The assets and liabilities of the spouses;
 {¶ 18} "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 {¶ 19} "(4) The liquidity of the property to be distributed;
 {¶ 20} "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 {¶ 21} "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 {¶ 22} "(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 {¶ 23} "(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 {¶ 24} "(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 25} Appellant contends the Old 3C Highway marital residence, which was found to have a value of $155,000 with a mortgage balance of approximately $57,000, is the "centerpiece" of the assets in this case, noting the undeveloped property on Hartford Road, which was awarded to him, has little equity after accounting for its mortgage, and perhaps will actually have negative equity. He further notes the parties have no significant retirement funds, investments, or other financial assets. He asserts the trial court "wanted to assure that the Appellee would get the house and simply `massaged' the numbers to get to that result[,]" despite the fact that she will not be in a position of sole custodian of the children. Appellant's Brief at 8. Appellant essentially argues that it is fundamentally unfair to deny him his equalization share of the marital residence until as long as seven years elapse, and also deny him any compensation for interim interest, while keeping his name on the mortgage but providing no security should appellee default, urging that the trial court has thus made him something akin to a silent partner with no right to participate in any gain.
 {¶ 26} Furthermore, in regard to the Hartford undeveloped acreage, appellant argues that in economic reality the property will have to be sold, either at a loss which he will have to cover, or at a profit which will not benefit from the lifetime income tax exclusion available for the marital residence.
 {¶ 27} In regard to the tools and the life insurance policy awarded to appellant, the largest assets other than the real property and the antique Chevy, appellant contends their liquidity is dubious, given that he needs the former for work purposes and the latter to be maintained for the children's benefit. Finally, appellant challenges the valuation of the remaining tangible property, suggesting the values were determined to "punish" him. Appellant's Brief at 12. He adds that the court ignored a debt he built up to his sister, post-filing, and that the credit card debt assessed to appellee stemmed in part from her attorney retainer and cosmetic surgery she completed shortly before the divorce filing.
 {¶ 28} In reviewing the aforesaid, we note equity is the guidepost in dividing the marital assets of the parties in a divorce action.Neville v. Neville, Holmes App. No. 01CA028, 2002-Ohio-2901, citingZimmie v. Zimmie (1984), 11 Ohio St.3d 94, 464 N.E.2d 142. The trial court, per its separate decision on the objections to the magistrate's decision, indicated it was seeking to preserve the marital home and give appellee what could be her optimal lifetime opportunity to have a house. Although the trial court's decision to potentially delay the equalization payment to appellant is perhaps not a textbook property division resolution, we find it within the parameters of the court's discretion and made within the guidelines of R.C. 3105.171(F). See Koegel v. Koegel
(1982), 69 Ohio St.2d 355 (emphasizing that a trial judge should be given wide latitude in dividing property between the parties). As to the other assets and debts, and appellant's suggestion of "number massaging," it is well-established that where the decision in a case turns upon credibility of testimony, and where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court. Hawkv. Hawk Tuscarawas App. No. 2002AP040024, 2002-Ohio-4384, citing Myersv. Garson, 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 1993-Ohio-9.
 {¶ 29} Accordingly, we hold the trial court did not abuse its discretion in allocating marital assets and debts. Appellant's First Assignment of Error is overruled.
 II. {¶ 30} In his Second Assignment of Error, appellant argues the trial court erred in granting spousal support under the circumstances presented. We disagree.
 {¶ 31} A trial court's decision concerning spousal support may only be altered if it constitutes an abuse of discretion. Kunkle v.Kunkle (1990), 51 Ohio St.3d 64, 67. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 218, 450 N.E.2d 1140. R.C. 3105.18(C)(1)(a) thru (n), provides the factors that a trial court is to review in determining whether spousal support is appropriate and reasonable and in determining the nature, amount, terms of payment, and duration of spousal support. R.C. 3105.18(C)(1) provides as follows:
 {¶ 32} "(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
 {¶ 33} "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code; (b) The relative earning abilities of the parties; (c) The ages and the physical, mental, and emotional conditions of the parties; (d) The retirement benefits of the parties; (e) The duration of the marriage; (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home; (g) The standard of living of the parties established during the marriage; (h) The relative extent of education of the parties; (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties; (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party; (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought; (l) The tax consequences, for each party, of an award of spousal support; (m) The lost income production capacity of either party that resulted from that party's marital responsibilities; (n) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 34} The parties were married for nineteen and one-half years. Appellee, age 40, testified at the magistrate's hearing that she was unemployed. She has a high school diploma and over sixteen years ago worked as an administrative assistant. After their second child was born, appellee chose to remain a stay-at-home parent, and the parties were nonetheless able to maintain a middle-class lifestyle. She expressed interest in returning to school to pursue a college degree. Appellant is forty-two years old and employed as an automotive technician, earning $62,000 per year, although his salary had been in prior years more in the range of $40,000-50,000. Both parties are in good health.
 {¶ 35} Appellant's chief contention is that he will face great difficulty making the spousal support payments under the circumstances, especially given his role in the shared parenting plan and corresponding need to maintain an apartment suitable for two teenagers and an adult. Nonetheless, the court's decision not to acknowledge all evidence relative to each and every factor listed in R.C. 3105.18(C)(1) does not necessarily mean the evidence was not considered. Barron v. Barron, Stark App. No. 2002CA00239, 2003-Ohio-649. A trial court judge is presumed to know the applicable law and apply it accordingly. State v. Eley (1996),77 Ohio St.3d 174, 180-181. Upon review, we find no abuse of discretion by the trial court in the award of spousal support under these facts.
 {¶ 36} Appellant's Second Assignment of Error is overruled.
 III. {¶ 37} In his Third Assignment of Error, appellant argues that the court erred in awarding attorney fees to appellee. We disagree.
 {¶ 38} An award of attorney's fees lies within the sound discretion of the trial court. Rand v. Rand (1985), 18 Ohio St.3d 356,359. R.C. 3105.18(H) reads as follows:
 {¶ 39} "(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees."
 {¶ 40} Appellant incorrectly asserts there was no testimony offered on the issue of attorney fees. However, appellee testified she had incurred legal expenses of $7309.65 as of the day before the trial. Tr. at 116. In addition, appellee's testimony also revealed as follows:
 {¶ 41} "Q. AND IS THERE AN EXHIBIT IN THIS FILE UNDER EXHIBIT 122 THAT SETS FORTH ALL OF THE BILLINGS THAT YOU HAVE RECEIVED FROM OUR OFFICE WITH ITEMIZATIONS OF THE CHARGES AND TIME AND THINGS THAT WERE DONE?
 {¶ 42} "A. YES.
 {¶ 43} "Q. AND HAVE WE BEEN CHARGING YOU FOR MY TIME AT A RATE OF $175 PER HOUR?
 {¶ 44} "A. YES.
 {¶ 45} "Q. NOW, KELLY, AT THE TIME THIS DIVORCE STARTED, COULD YOU HAVE DONE THIS DIVORCE, DONE THE LEGAL WORK IN THIS BY YOURSELF WITHOUT AN ATTORNEY?
 {¶ 46} "A. NO.
 {¶ 47} "Q. DO YOU FEEL THAT IT WAS NECESSARY FOR YOU TO HAVE AN ATTORNEY TO DO THIS FOR YOU?
 {¶ 48} "A. YES.
 {¶ 49} "Q. AND HAVE YOU HAD ANY FORM OF INCOME OTHER THAN THE ONE DAY YOU WORKED SINCE THE BEGINNING OF THIS DIVORCE?
 {¶ 50} "A. NO." Tr. at 116-117.
 {¶ 51} Both the magistrate's decision and the trial court's ruling on the objections are commendably thorough and patently indicative that the court was quite familiarized with the financial conditions surrounding the divorce at issue. Upon review, we are unpersuaded the trial court abused its discretion in awarding appellee $5000 in attorney fees.
 {¶ 52} Appellant's Third Assignment of Error is overruled.
 IV. {¶ 53} In his Fourth Assignment of Error, appellant contends the trial court erred in its calculation of child support. We disagree.
 {¶ 54} We initially note, pursuant to App.R. 16(A)(7), an appellant's brief shall include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions * * *." An appellant should also make reference to the place in the record where each error is reflected, as required by App.R. 16(A)(3). Although the present Assignment of Error specifically makes reference to "financial circumstances" and "division of time," appellant's argument consists essentially of the assertion that he cannot meet his obligation to pay his support under the decree.
 {¶ 55} "A child support computation worksheet, required to be used by a trial court in calculating the amount of an obligor's child support obligation in accordance with R.C. 3113.215, must actually be completed and made a part of the trial court's record." Marker v. Grimm (1992),65 Ohio St.3d 139, 139, 601 N.E.2d 496, at paragraph one of the syllabus. The rule of Marker is applicable to modern R.C. 3119.022. SeeCutlip v. Cutlip, Richland App. No. 02CA32, 2002-Ohio-5872. The trial court in the case sub judice completed a statutory support worksheet based on the income information provided at trial, and furthermore granted a deviation based on the shared parenting arrangement of the parties. Upon review thereof, we find no basis to overturn the decision of the trial court on the basis that it abused its discretion.
 {¶ 56} Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 57} In his Fifth Assignment of Error, appellant contends trial court erred in relying on computations from FinPlan financial software. Although appellant acknowledged in his supplemental objection that FinPlan had been used by the magistrate, no clear objection was made thereto. Civ.R. 53(E) requires the objections be specific. North v.Murphy (March 9, 2001), Tuscarawas App. No. 2000AP050044. Further, Civ.R. 53(E)(3)(b) provides that "[a] party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party has objected to that finding or conclusion under this rule." See, e.g., Stamatakis v. Robinson (January 27, 1997), Stark App. No. 96CA303.
 {¶ 58} Appellant's Fifth Assignment of Error is therefore overruled.
 VI. {¶ 59} In his Sixth Assignment of Error, appellant contends that the court allowed the introduction of exhibits without proper foundation.
 {¶ 60} Appellant's argument is merely a general assertion, asking that we look at the "Index to Record." See Appellant's Brief at 22. However, an appellant should specifically raise on appeal instances of the prejudicial effect of the use of disputed exhibits, rather than leaving an appellate court to speculate how the exhibits affected the outcome of the case. See Steiner v. Steiner, Stark App. No. 2002CA00350,2003-Ohio-1904, citing Enz v. Enz (June 5, 1998), Miami App. No. 97-CA-53.
 {¶ 61} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180. Both parties testified at length in the trial sub judice, and appellant has failed to demonstrate an abuse of discretion as to any documentary exhibits. See, also, App.R. 12.
 {¶ 62} Appellant's Sixth Assignment of Error is overruled.
 {¶ 63} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed.
By: Wise, J., Hoffman, P., J. and Edwards, J., J. concur.